IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEITH L. HARE, #Y50064,            ) | |
| )  | |
| Plaintiff,            ) | |
| )  | |
| vs.                                                            ) | Case No. 22-cv-02281-JPG |
| )  | |
| RACHELLE BRAUN            ) | |
| and MARY DAMBACHER,            ) | |
| )  | |
| Defendants.            ) | |

### <u>MEMORANDUM & ORDER</u>

**GILBERT, District Judge:**

This matter is before the Court on a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Mary Dambacher (Doc. 73), joined by Rachelle Braun (Docs. 75, 76), and supplemented by both defendants (Doc. 84). Plaintiff Keith Hare opposes the motion based on numerous ambiguities in Madison County Jail's grievance procedure and confusing instructions from staff. (Doc. 77). Defendants replied to each of his arguments. (Docs. 78-80, 84). For the reasons set forth below, the motion shall be **DENIED**.

#### BACKGROUND

Plaintiff Keith Hare brings this lawsuit pursuant to 42 U.S.C. § 1983 for constitutional claims arising from the alleged denial of medical care for several serious health conditions at Madison County Jail ("Jail"). (Doc. 1). Plaintiff allegedly suffered from left shoulder pain, a heart condition, abnormal bloodwork, and exposure to COVID-19. He claims that the defendants either denied him medical care or allowed others to deny it.

The Court screened the First Amended Complaint (Doc. 14) under 28 U.S.C. § 1915A and allowed Plaintiff to proceed with Eighth and Fourteenth Amendment claims against Defendants

1

for inadequate treatment of his left shoulder, arm, and hand pain (Count 1), heart condition (Count 2), abnormal bloodwork (Count 3), and COVID-19 (Count 4). (Doc. 17). Defendant Braun filed an answer (Doc. 30) and motion to dismiss Count 4 (Doc. 31). Rather than oppose the motion, Plaintiff requested and received permission to file a Second Amended Complaint. (Docs. 46, 47).

The Second Amended Complaint (Doc. 48) now serves as the operative complaint. Four claims survived screening against Defendants Braun and Dambacher under the Eighth and Fourteenth Amendments[1] for denying Plaintiff adequate medical care at the Jail for his left shoulder, elbow, and hand pain from June 2020 until February 2022 (Count 1); heart condition from June 2020 until February 2022 (Count 2); abnormal bloodwork from April 2021 (Count 3); and COVID-19 in October 2020 (Count 4). *See* Doc. 53.

Defendant Dambacher moved for summary judgment based on Plaintiff's failure to exhaust his administrative remedies, *see* Doc. 73, and Defendant Braun joined in the motion, *see* Docs. 75, 76. Defendants supplemented the motion pursuant to Court Order (Doc. 81) to include references to evidentiary materials in the record. (Doc. 81) (citing FED. R. CIV. P. 56 and SDIL-LR 56.1. (Doc. 84). Plaintiff filed a response in opposition to the motion. (Doc. 77). Defendants replied to each of his arguments. (Docs. 78-80, 84).

## MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment based on Plaintiff's failure to properly appeal ten grievances he filed on Counts 1, 2, and 3 and his failure to grieve Count 4 altogether. All ten grievances received an initial response, and he took no further action on nine of these. Plaintiff

---

[1] Per the First Amended Complaint (Doc. 14), Plaintiff was a pretrial detainee until November 17, 2021, triggering protection under the Fourteenth Amendment Due Process Clause. *See McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). He was a convicted prisoner from November 17, 2021 until his transfer in February 13, 2022, and thus protected under the Eighth Amendment Cruel and Unusual Punishment Clause. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

2

appealed only one grievance, but he stopped pursuing exhaustion after he received a response to the appeal. He did not resubmit his grievance or appeal to the Jail Administrator or Illinois Department of Corrections' Jail & Detention Standards Unit. Both defendants move for summary judgment on all four claims. In addition, Defendant Dambacher also move for summary judgment because the plaintiff did not identify the nurse practitioner by name in any grievances.

## RESPONSE

Plaintiff opposes summary judgment. He argues that the Jail's grievance process was ambiguous. The grievance procedure described the steps for exhausting non-medical grievances, but his grievances were all medical in nature. When he followed the steps in the grievance process to exhaust his remedies for his medical grievances, Plaintiff learned there was a different process for medical grievances without receiving the details of it. In addition, the language governing appeals to the IDOC's Jail & Detention Standards Unit was discretionary, not mandatory. He seeks an order denying summary judgment on Counts 1, 2, and 3 based on the ambiguities in the Jail's grievance process, and he requests denial of summary judgment on Count 4 because he was too sick with COVID-19 to file grievances regarding his exposure.

## FINDINGS OF FACT

The undisputed evidence and reasonable inferences establish the following facts relevant to the pending motion: Plaintiff was an inmate at Madison County Jail from December 3, 2019 until February 13, 2022. (Docs. 73, 84, Findings of Fact (FOF) 1; Doc. 77). While detained at the Jail, Plaintiff suffered from several serious health conditions including left shoulder pain, a heart condition, abnormal bloodwork, and exposure to COVID-19. (Doc. 48; Docs. 73, 84, FOF 3). He was sent to an outside provider for his left shoulder pain. (Docs. 73, 84, FOF 4). He was sent to an emergency room on two occasions and then referred to a specialist about his chest pain. *Id*. He

remained at the Jail after his exposure to COVID-19. (Docs. 73, 84, FOF 4; Doc. 77, p. 8). During the relevant timeframe, Mary Dambacher was employed as a nurse practitioner at Madison County Jail. (Docs. 73, 84, FOF 2). Rachelle Braun served as the infirmary charge nurse and responded to many of the grievances filed in connection with this matter.

Madison County Jail had a grievance procedure in effect at all relevant times, and it was updated on December 3, 2021. *Id*. at FOF 5. The old and new versions are quoted in their entirety below. Plaintiff submitted ten grievances between June 3, 2020 and January 14, 2022, and medical staff issued a response to each one. *See* Docs. 73, 84, FOF 11 (citing Doc. 84-3: MED Def 7, 8, 38, 39, 52-59, 120, 121, 126, 127, 131-38); Doc. 77. Plaintiff appealed only one—the response to his grievance dated January 14, 2022. *See* Docs. 73, 84, FOF 12 (citing Doc. 84-3: MED Def. 126-27); *see also* Doc. 77. The appeal was processed without delay, and a response was issued. *Id*. Plaintiff took no further steps to follow up on this, or any other, grievance. *See* Docs. 73, 84, FOF 13; Doc. 77.

## CONCLUSIONS OF LAW

### A.     Applicable Legal Standards

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the pleadings, depositions, interrogatories, admissions, and affidavits show no genuine issue of material fact, the moving party is entitled to summary judgment. FED. R. CIV. P. 56(c). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmovant. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Typically, the court cannot resolve factual disputes on a motion for summary judgment; factual disputes must be decided by a jury. *See, e.g., Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir.

2014) ("[A] trial is the standard means of resolving factual disputes. . . ."). When the motion pertains to a prisoner's failure to exhaust, however, courts generally conduct an evidentiary hearing to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), *abrogated by Perttu v. Richards*, 605 U.S. 460, 468 (2025) (holding that parties have a right to a jury trial to resolve genuine issues of fact on PLRA exhaustion when the issues are intertwined with the merits of a claim that falls under the Seventh Amendment).[2] Where there are no material factual disputes, no evidentiary hearing is necessary. *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

The Prison Litigation Reform Act (PLRA) requires a prisoner to bring a lawsuit about the conditions of his confinement only after he exhausts all available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). To exhaust, a prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id*. at 1024. Exhaustion must occur before the prisoner files suit. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).

Madison County Jail had two grievance procedures in effect during Plaintiff's detention.

The old grievance procedure was in effect until December 3, 2021, and it states:

---

[2] The Supreme Court's holding in *Perttu* altered the Court's ability to conduct a *Pavey* hearing where a factual dispute about exhaustion is intertwined with a factual dispute about the merits of a claim governed by the Seventh Amendment. The defendant in *Perttu* was implicated in an alleged retaliation claim for destroying grievances that named him, so factual disputes about exhaustion were necessarily intertwined with the underlying merits of the retaliation claim. The instant case presents no such intertwinement issue.

## [OLD] GRIEVANCE PROCEDURE

53. If a detainee believes he/she was subject to an unfair or unjust circumstance or action, and feels there exist grounds for a formal complaint, he/she may utilize the Detainee Grievance Procedure. Grounds for initiating a grievance may include, but are not limited to, the following:

- Alleged violations of civil rights
- Alleged criminal acts
- Alleged unjust denial or restriction of detainee privileges
- Alleged prohibited act by a jail staff member

A detainee submitted grievance shall include all relevant information regarding the claim including, but not limited to the following:

- The right or privilege violated
- Any persons involved
- Witnesses, if any
- Date of occurrence
- Any and all pertinent details

Upon request, Jail staff shall provide a piece of paper to any detainee requesting such for the purpose of allowing him/her to prepare a grievance.

Detainee grievances shall be submitted on an individual basis and shall be submitted to any on-duty jail staff member within twenty-four (24) hours of the time the detainee has learned of the matter or concern at issue. Grievances that are not submitted accordingly, or that are unsigned, or that are signed or authored by more than one detainee, will not be processed as a grievance.

Detainees shall receive a written response from a Grievance Officer within seven (7) business days from the date the properly submitted grievance was received, except that action shall be taken by jail staff as immediately as practicable when the nature of the grievance could potentially subject the detainee to personal injury or harm if not acted upon in such a manner.

Detainees may appeal the decision of the Grievance Officer by submitting an appeal in writing to the Jail Superintendent or Jail Administrator within twenty-four (24) hours of receipt of the Grievance Officer's decision.

The Jail Superintendent or Jail Administrator shall provide a written response to any appeal within seven (7) business days from the date of receipt of the appeal. The decision subsequently rendered by the Jail Superintendent or Jail Administrator shall be considered final.

Should any detainee wish to refute the final decision rendered by the Jail Superintendent or Jail Administrator following any appeal, or should any detainee believe his/her rights to

have been violated while in this jail, he/she may address any such concern in writing to the Illinois Department of Corrections at:

Illinois Department of Corrections
1301 Concordia Court
Springfield, IL 62702

(*See* Doc. 73-1, pp. 14-16; Doc. 84-1, pp. 14-16).

The new version took effect December 3, 2021, and it states:

### [NEW] GRIEVANCE PROCEDURE

55. A grievance is an internal process for the resolution of complaints. <u>It is not a process to:</u>

- Request services
- Insult staff
- Retaliate against staff

If a detainee believes he/she was subject to an unfair or unjust circumstance or action, and feels there exist grounds for a formal complaint, he/she may utilize the Detainee Grievance Procedure. Grounds for initiating a grievance may include, but are not limited to, the following:

- Alleged violations of civil rights
- Alleged criminal acts
- Alleged unjust denial or restriction of detainee privileges
- Alleged prohibited act by a jail staff member

A detainee submitted grievance shall include all relevant information regarding the claim including, but not limited to the following:

- The right or privilege violated
- Any persons involved
- Witnesses, if any
- Date of occurrence
- Any and all pertinent details

Prior to completion of a grievance the concerned detainee shall attempt to resolve the issue at hand with on-duty jail staff. It is only after a failed attempt to resolve the issue that that [sic] a grievance should be filed.

Detainee grievances shall be submitted on an individual basis via a jail issued tablet within seventy-two (72) hours of the time the detainee has learned of the matter or concern at issue. Grievances not submitted accordingly, or that are unsigned, or that are signed or authored by more than one detainee, will not be processed as a grievance.

> Grievances should pertain to one specific matter and not multiple issues or occurrences unless there is a correlation between events that involve one specific issue.
>
> Detainees shall receive a response from jail staff for all properly submitted grievances, except in circumstances when action must be taken by jail staff immediately for situations that are matters of health and safety.
>
> Detainees may appeal the decision of jail staff by submitting their appeal on their jail issued tablet within twenty-four (24) hours of receiving a grievance response.
>
> Responses to grievances and appeals will be handled within a reasonable amount of time contingent on facility needs and responsibilities.
>
> If a detainee files a misleading, slandering (false accusations), including false emergency grievance, the detainee may be subject to disciplinary action or other appropriate action as determined by the Jail Administrator or Jail Superintendent.
>
> Should any detainee wish to refute the final decision rendered by jail staff on any appeal, or should any detainee believe his/her rights to [sic] have been violated while in this jail, he/she may address any such concern in writing to the Illinois Department of Corrections at:
>
> Illinois Department of Corrections
> 1301 Concordia Court
> Springfield, IL 62702
>
> Note: Jail tablet submissions are the preferred method to submit grievances and other requests. If an exigent circumstance exists, hard copy grievance forms shall be provided to a requesting detainee at no cost.

(*See* Doc. 73-2, pp. 21-23; Doc. 77, pp. 16-17 (excerpt only); Doc. 84-2, pp. 21-23).

**B.     Analysis**

To comply with the Prison Litigation Reform Act, an inmate must exhaust his *available* administrative remedies.  42 U.S.C. § 1997e(a).  He is not required to exhaust unavailable ones. *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Ross v. Blake*, 578 U.S. 632, 642 (2016); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013).  The United States Supreme Court has adopted a definition of "available" that means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained."  *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001)

8

(internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (citing *Booth*, 532 U.S. at 738).

The Supreme Court has identified three situations that render a grievance process unavailable because it is not capable of use to obtain relief. *Ross*, 578 U.S. at 643. First, the process is unavailable when it operates as a simple dead end. *Id*. (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). Second, a grievance process is unavailable when it is incapable of use because "no ordinary prisoner can make sense of what it demands." *Reid v. Balota*, 962 F.3d at 329 (quoting *Ross*, 578 U.S. at 642). Third, a grievance process is unavailable when prison officials thwart an inmate's efforts to exhaust his administrative remedies through "machination, misrepresentation, or intimidation." *Id*. In each of these three circumstances, the unavailability of the grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

Plaintiff has raised genuine issues of material fact about the availability of the grievance process. Among other things, Plaintiff points out that different procedures were in effect during the relevant time, and this alone made the process confusing. The steps for exhausting administrative remedies was slightly different in each version of the Jail's grievance procedure, adding to the confusion. The old version did not require an attempt at informal resolution of a complaint before initiating the formal grievance process, while the new version made this mandatory. Both versions required an inmate to file a grievance with an on-duty officer and then file an appeal of an unsatisfactory decision. However, the old version required an inmate to file his appeal with the Jail Administrator or Jail Superintendent and deemed the response "final,"

9

while the new version required the inmate to file an appeal on the jail-issued tablet, with no one in particular, and deemed the response "final." Both versions made further appeal to the IDOC Jail Detention & Standards Unit discretionary, by indicating that an inmate "may" further complain about an issue with this entity. (*See* Old and New Grievance Procedure).

In addition to facial ambiguities in the policies, Plaintiff received confusing instructions about exhaustion of medical grievances from a Jail Administrator early on. (Doc. 77; Doc. 84-3, pp. 55-57). In response to his appeal of a grievance filed for Counts 1 and 2 on September 12, 2020, Jail Administrator Tharp provided the following response on September 20, 2020: "Jail Command Staff will defer all medical related issues to the medical staff within our infirmary without exception. In addition, we (Command Staff) will not go against prescribed medical treatment by our medical staff as Captain Ridings nor myself are qualified to do so." *Id*. at 56. Tharp then concluded that Nurse Braun's response sufficiently addressed Plaintiff's concerns. *Id*. This response made it clear that non-medical staff would not deviate from the decision of medical staff, making the path to exhaustion confusing or even futile. Based on these ambiguities and others, the Court must deny summary judgment on Counts 1, 2, and 3 at this stage.

As for Count 4, Plaintiff argues that he was too sick to file a grievance or appeal in the proper timeframe about his exposure to COVID-19. Plaintiff raises a genuine issue of material fact about his ability to exhaust. Summary judgment must be denied on Count 4 as well.

Finally, Mary Dambacher seeks summary judgment because Plaintiff failed to identify the nurse practitioner by name in any grievances. Neither version of the Jail's grievance procedure explicitly required an inmate to identify staff by first and last name. Both versions required the inmate to set forth "all relevant information regarding the claim, including . . . any persons involved." (*See* Old and New Grievance Procedure). In his grievances, Plaintiff frequently

referred to "Nurse Practitioner," "NP," and/or "Nurse Pract." It is not clear whether one or more nurse practitioners worked at the Jail. The Court reviewed the record and found no reference to another nurse practitioner. And, Defendant Braun suggested that there was only one in a grievance response dated September 19, 2020: "Our medical provider is **a** nurse practitioner who is licensed to prescribe medication." (Doc. 84-3, p. 55) (emphasis added). If there was only one nurse practitioner working at the time, Plaintiff's generic reference would be enough to put the facility on notice of his grievance against this individual. Because genuine issues of material fact surround this issue, Defendant Dambacher is not entitled to summary judgment on the issue of exhaustion.

## Conclusion

The Motion for Summary Judgment on Exhaustion (Docs. 73, 84) filed by Defendant Mary Dambacher and joined by Defendant Rachelle Braun (Docs. 79, 80) is **DENIED.**

If Defendants would like to request a *Pavey* hearing, they must do so, in writing, within fourteen days (on or before **October 14, 2025**). If Defendants do not seek a *Pavey* hearing, they must file a motion to withdraw the affirmative defense of exhaustion by the same deadline. Failure to request a *Pavey* hearing by this deadline will be deemed a waiver of the affirmative defense based on exhaustion of administrative remedies.

**IT IS SO ORDERED.**

**DATED: 9/29/2025**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**